UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.A. T.-B., <br><br>               Plaintiff(s),<br><br>  v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>               Defendant(s). | CASE NO. C25-1192-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

The same day Petitioner was arrested by United States Immigration and Customs Enforcement ("ICE") agents, he filed a petition for a writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 1. His amended petition argues that his detention is unlawful because it, among other things, violates his constitutional right to procedural due process. Dkt. No. 4. The Court enters this order memorializing its oral ruling that Petitioner's detention violates his constitutional right to procedural due process and therefore GRANTS the petition.[1] Dkt. Nos. 4, 36.

**I.     BACKGROUND**

Petitioner is a citizen of Colombia who entered the United States on or about September 6, 2023, and was thereafter processed for removal proceedings by Border Patrol. Dkt. No. 18-1, Dkt. No. 18-2, Dkt. No. 19 ¶ 4. Petitioner was arrested and charged with inadmissibility under 8 U.S.C.

---

[1] Because the Court finds that this basis supports granting the petition, the Court need not address Petitioner's alternative arguments.

§ 212(a)(6)(A)(i). Dkt. No. 18-2. After two days of detention, an ICE officer released Petitioner on an order of recognizance, requiring him to, among other things, enroll in and comply with the Alternatives to Detention ("ATD") program. Dkt. No. 18-3. Petitioner's conditions of release indicate that a failure to comply with ATD program requirements would result in a redetermination of his release conditions or his arrest and detention. *Id*. Petitioner was ordered to report to the ICE office in Portland, Oregon, on November 10, 2023, and thereafter served with a notice to appear in immigration court in Portland, Oregon, on December 3, 2024. Dkt. No. 18-3 at 2, Dkt. No. 19 ¶ 7.

Petitioner filed an application for asylum in August 2024. Dkt. No. 23-2 ¶ 7. Petitioner's initial immigration hearing was continued from December 3, 2024, to June 5, 2025, and in January 2025, Petitioner's reporting requirements under the ATD program were reduced. Dkt. No. 19 ¶ 7, Dkt. No. 23-2 ¶ 6, Dkt. No. 23-5 at 5–6. In February 2025, USCIS granted Petitioner authorization to work. Dkt. No. 23-4.

When Petitioner appeared at immigration court on June 5 without counsel, the Government moved to dismiss the removal proceedings to allow it to pursue Petitioner's expedited removal. *See* Dkt. No. 23-3 at 3–4. Petitioner's initial hearing was continued to June 18, 2025, so that Petitioner could obtain counsel. Dkt. No. 23-5 ¶ 1. Petitioner engaged counsel, who filed a motion on June 12 to consolidate Petitioner's asylum claim with the asylum claims of his mother, stepfather, and siblings. *Id*.

Petitioner appeared with counsel at the June 18 hearing, where the Government withdrew its motion to dismiss and requested additional time to respond to Petitioner's motion to consolidate his asylum application. Dkt. No. 23-5 ¶ 2. The immigration judge granted the Government's request for additional time and set a response deadline of June 30, 2025. *Id*.

After Petitioner left the immigration court hearing, he was followed by ICE agents who arrested him under 8 U.S.C. § 1226, claiming that they were doing so because he had missed appointments. *See* Dkt. No. 19-1, Dkt. No. 19-2, Dkt. No. 23-5 ¶ 3. When Petitioner's counsel disputed that reason, the agents stated that Petitioner was being arrested because of "enforcement priorities[.]" *Id.*[2]

Petitioner was initially detained in Oregon and thereafter transferred to the Northwest ICE Processing Center in Tacoma, Washington, where he remains in custody. Dkt. No. 19 ¶ 14, Dkt. No. 23-2 ¶ 13. Hours after his arrest, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the District of Oregon. Dkt. Nos. 1, 4. The petition requests Petitioner's release from custody. Dkt. No. 4 ¶ 51.

The United States District Court for the District of Oregon issued an order prohibiting the removal of Petitioner from Oregon without providing advance notice and requiring immediate notification if Petitioner had already been removed. Dkt. No. 5. Upon notice that Petitioner had been transferred from the District of Oregon into Washington state, and with agreement of the parties, the habeas case was transferred to this Court, assigned to the undersigned and referred to United States Magistrate Judge Brian A. Tsuchida. Dkt. Nos. 8–10.

Judge Tsuchida then issued a briefing schedule on the habeas petition, directing the Government[3] to file a return and status report by July 18, 2025, explaining why the Court should not grant the habeas petition. Dkt. No. 12. The Government timely filed a return memorandum and motion to dismiss the habeas petition, arguing that Petitioner's detention was lawful due to

---

[2] In a form completed on the day of the arrest, the arresting ICE agents linked Petitioner's arrest to a "change in directive" to detain him while his immigration case is pending. Dkt. No. 23-6 at 4. Another version of that form was generated the following week, explicitly attributing Petitioner's arrest to his ATD violations. Dkt. No. 18-4.

[3] Hereinafter, this order refers to Respondents—ICE, the United States Department of Homeland Security ("DHS"), Seattle ICE Field Office Director Cammilla Wamsley, ICE Acting Director Todd Lyons, DHS Secretary Kristi Noem, and United States Attorney General Pamela Bondi—collectively as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

two violations of the terms of Petitioner's ATD release conditions in December 2024 and January 2025 and that his APA claim is not cognizable. Dkt. No. 17 at 3–5. Petitioner timely filed an opposition requesting oral argument on the Government's motion and contending that any alleged ATD violations were mere pretext for his arrest and detention, which was actually precipitated by "broad executive directives to detain immigrants in large numbers." Dkt. No. 22 at 12–13. The Government's reply brief was filed August 15, 2025. Dkt. No. 32.

The Court heard oral argument on the petition for writ of habeas corpus, as well as Petitioner's ripe emergency motion for immediate release (Dkt. No. 24), on August 18, 2025. *See* Dkt. No. 31 (explaining that the petition and the motion would be heard together). For the following reasons, the Court grants the habeas petition and orders that Petitioner be released immediately.

## II.    ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and

in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022).[4] The parties agree that the *Mathews* text applies here (Dkt. No. 22 at 22–23, Dkt. No. 32 at 10), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements.

A.  **Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty.

The Government disagrees, emphasizing that Petitioner was initially released subject to ATD conditions at ICE's discretion, and argues that Petitioner cannot have a protected interest in his liberty if his liberty depends on the exercise of governmental discretion. Dkt. No. 17 at 4. But

---

[4] Numerous district courts have since applied this test in similar circumstances. *See, e.g.*, *Castellon v. Kaiser*, No. 1:25-cv-00968 JLT EPG, 2025 WL 2373425, at *9 (E.D. Cal. Aug. 14, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *13 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Pinchi v. Noem*, __ F. Supp. 3d __, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *2 (N.D. Cal. July 14, 2025).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

to support this line of argument, the Government cites inapposite cases not involving liberty, but whether a plaintiff is personally entitled to police enforcement of restraining orders or to have an employment contract renewed. *See id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). The facts of these cases bear no resemblance to this one. Because the United States Supreme Court has held elsewhere that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action[,]" the Court finds that Petitioner's liberty interest implicated here is constitutionally protected. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). That the Government exercises discretion in determining whether and which conditions of release to impose does not eliminate the protections afforded to Petitioner's liberty interest. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, __ F. Supp. 3d __, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

And although the Government also argues that "Petitioner cannot claim that the government promised him ongoing freedom[,]" the Court does not read Petitioner's briefing to make such a claim. Dkt. No. 32 at 11. Petitioner does contend, however, that the Constitution protects his interest in liberty by requiring due process if it is to be deprived, and the Court agrees with this proposition.

### B. The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest in the absence of a pre-detention hearing is high.

As described earlier in this order, Petitioner was arrested by ICE agents immediately after appearing in immigration court. Although the Government now asserts that ICE became aware of Petitioner's alleged ATD violations (which occurred months earlier) a few hours before his immigration hearing (Dkt. No. 33 ¶¶ 4–5), the Government's attorney did not raise the violations, nor argue that Petitioner should be detained for any reason, when Petitioner appeared in court. Petitioner was then provided multiple inconsistent justifications for his arrest, first from the ICE agents at the time and then in the competing I-213 reports in the record. *Compare* Dkt. No. 18-4, *with* Dkt. No. 23-6. Considering the timeline of the alleged violations vis-a-vis other Government actions in Petitioner's favor, *i.e.* his reduced ATD reporting requirements and work authorization, these circumstances raise concerns that Petitioner's arrest was not in fact motivated by his ATD violations. *See, e.g.*, Dkt. No. 23-2 ¶ 6, Dkt. No. 23-4.

The Government posits that the I-213 reports can be harmonized, and suggests that lack of resources and bureaucratic disconnect explains why Petitioner's ATD violations were not acted upon sooner, and why, despite his violations, his ATD requirements were thereafter reduced and he was granted work authorization. Dkt. No. 32 at 7–8. The Court has no reason to doubt the practical logistical difficulties the Government faces in managing immigration cases, but finds that the challenges facing under-resourced and disjointed agencies underscore rather than undermine the need for robust procedural safeguards before a deprivation of liberty occurs.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

Ultimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process. *See Guillermo M.R. v. Kaiser*, __ F. Supp. 3d __, No. 25-cv-05436-RFL, 2025 WL 1983677, at *7 (N.D. Cal. July 17, 2025) (finding "undeniably stark" risk of erroneous deprivation where the Government contends that "notwithstanding a neutral arbiter's determination that Petitioner should be released, ICE is entitled to unilaterally terminate the IJ's order by re-detaining Petitioner without a hearing for at least six months, based on ICE's own determination in its sole discretion that additional conditions of release unilaterally set by ICE had been violated").

The Government next contends that Petitioner was not statutorily entitled to a hearing before he was detained initially, and reasons that if he was not entitled to a hearing then, he was not entitled to a hearing before he was re-detained. Dkt. No. 32 at 11–12. But Petitioner does not claim to be entitled to a hearing consistent with a particular statute: he argues that the Due Process Clause requires it. This line of the Government's reasoning therefore does not address Petitioner's concern and cannot carry the day. *See, e.g.*, *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

Moreover, the Government's argument fails to appreciate distinctions between Petitioner's situation upon entry to the United States and his situation when he was re-detained: Petitioner's initial detention and release occurred before he had ever appeared in immigration court, before he had retained an attorney, and was made with consideration of the need for detention. Specifically,

ICE's initial decision to release Petitioner was based on a consideration of the danger that Petitioner posed to the community and the likelihood that he would appear for future hearings. *See* 8 C.F.R. § 1236.1(c)(8)). The Court finds that arresting and re-detaining him at this point without first reconsidering those factors poses a significant risk of an erroneous deprivation of Petitioner's liberty interest in continued release. *See, e.g.*, *Kelly v. Almodovar*, 25 Civ. 6448 (AT) (S.D.N.Y. Aug. 15, 2025) (finding that "an individualized assessment of a suspect's flight risk or dangerousness" is required by 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8) before detention, and this requirement is not satisfied by a review of criminal charges); *Pinchi v. Noem*, __ F. Supp. 3d __, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Providing [petitioner] with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Doe*, 2025 WL 691664, at *6 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *Valdez v. Joyce*, 25 Civ. 4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.").

The Court rejects any "suggestion that government agents may sweep up any person they wish and hold that person [] without consideration of dangerousness or flight risk so long as the person will, at some unknown [future] point in time, be allowed to ask some other official for his or her release[,]" as this course of action "offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Kelly*, slip op. at 7.

C.  **The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. Petitioner does not dispute that the Government has an

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

interest in detaining non-citizens to the extent needed to ensure that they do not abscond or commit crimes. *See* Dkt. No. 22 at 27. But where ICE was previously persuaded that Petitioner would not abscond nor would he pose a danger to his community, and those factors were not re-assessed before his June 2025 arrest and detention, the Court must consider the Government's interest in detaining Petitioner in this context without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that it has a "strong interest" in preventing noncitizens from remaining in the United States in violation of the law, as well as in ensuring its orders are followed. Dkt. No. 32 at 12. Those interests are not threatened if a pre-deprivation hearing is required, however. That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner attended multiple immigration court hearings where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continuing release from custody, and that due process requires that Petitioner receive a hearing before an immigration judge before he can be re-detained. *See Valdez*, 2025 WL 1707737, at *4 ("Once immigration court proceedings are underway, decisions regarding

continued release are to be made by the Immigration Judge with the protections of judicial due process.").

Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty. *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm, the Court finds it appropriate to waive any prudential exhaustion requirement. *See, e.g.*, *Salad v. Dep't of Corr.*, 769 F. Supp. 3d 913, 921–22 (D. Ala. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)).

### III.   CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. No. 4), DENIES Respondents' motion to dismiss (Dkt. No. 17), and DENIES Petitioner's motion for injunctive relief (Dkt. No. 24) as moot. The Court ORDERS that Petitioner shall be released from custody immediately and may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate.

Dated this 19th day of August, 2025.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 11